It was decreed in this cause that the defendants, The Grand Lodge of the Most Ancient and Honorable Society of Free and Accepted Masons for the State of New Jersey and Schiller Lodge No. 66, F. A.M. (Newark), interplead their demands to a savings account of $1,554.62 in the name of Schiller Lodge No. 66, F. 
A.M., in the complainant's bank, now deposited in court.
The Grand Lodge was formed in 1786 with supreme jurisdiction over subordinate lodges within this state, to charter, regulate and to abolish them. In 1865 the Grand Lodge *Page 461 
chartered Schiller Lodge. The Grand Lodge annulled the charter in 1921 for disobedience. The validity of that action was upheld inPleminik v. Prickitt, 97 N.J. Eq. 340.
Upon dissolution of Schiller Lodge the Grand Lodge chartered Wilkins Lodge No. 231, F. A.M. (Newark), which absorbed most of the former's members; few remained outside the fold, now about ten in number. They assemble upon call, but not as a Masonic body; not as a "clandestine" lodge. The group, presently under the leadership of Wilhelm Zeh, lays claim to the fund as Schiller Lodge.
By "General Regulation" of the Grand Lodge, a part of its laws, it is provided that:
"Upon the demise of any Lodge within this jurisdiction, the last Secretary and Treasurer of said Lodge shall, within one month thereafter, surrender to the Grand Secretary all the books, papers, jewels, funds and furniture of the Lodge so demised, to be deposited in the archives in the Grand Lodge."
Obviously the Grand Lodge is entitled to the fund unless there is merit in the claim of the group.
It is contended that Schiller Lodge is an existing voluntary association, represented by the group. That may be, but the group is not Schiller Lodge No. 66, F. A.M., which came into being by the grace of the Grand Lodge, by whose warrant it continued to be and to whose laws and regulations it subscribed and submitted; it is not Schiller Lodge No. 66, F. A.M., which owned the fund on deposit. When the privileges enjoyed by that body were withdrawn by the annullment of its charter, the lodge became extinct. There could be no succession. The dissident group is without heritage.
A technical point is that the Grand Lodge, as a corporation, had no power to enact the "General Regulation," to annul the charter of Schiller Lodge or to legislate the devolution of its property. The Grand Lodge incorporated under the laws of New Jersey in 1866, one year after Schiller Lodge No. 66, F. A.M. was chartered. The supremacy of the Grand Lodge, its jurisdiction and authority over Masonic lodges within the state are inter-relationally inherent. The power of an incorporated Grand Lodge to create, govern and *Page 462 
abolish subordinate lodges does not rest in statutory grant. Incorporation simply clothes it with additional statutory rights, coupled with statutory responsibilities. Schiller Lodge No. 66, F. A.M., existed by sanction, and expired by mandate, of the Grand Lodge. A creature cannot deny its creator.
It is argued that the "General Regulation" is insufficient to transfer the fund to the Grand Lodge. One criticism is that it provides that property of a demised lodge be deposited in the "archives" of the Grand Lodge, thereby creating it a bailee, which excludes the idea of the transfer of title. We are not in agreement that title does not pass; but be that as it may, the possessory right to the fund is in the Grand Lodge, the fund to be used in the promotion of its high office, consistent with its ancient traditions. A play is made upon the word "demise," that it "connotes a natural death and not death under the guillotine." Either manner of exit is normally unwelcome; the result is the same though the obsequies may vary. The term comprehends the extinction of a subordinate lodge, whether the event be calmly awaited or the fate involuntarily imposed.
Another argument is that the "General Regulation" is applicable only to lodges which admit the jurisdiction of the Grand Lodge. Schiller Lodge made the genuflection when it accepted its charter, and subserviently knelt at the altar of Masonry throughout its career. Its denial of the jurisdiction of the Grand Lodge to excommunicate is paradoxical. The denial, however, was not of the jurisdiction to erase the lodge, but of the lawful exercise of the jurisdiction.
The remaining contention is that the fund should be applied to the payment of the debts of Schiller Lodge, incurred by the group for rent of its quarters and for obligations to counsel in resisting the Grand Lodge in the annulment proceedings. If they are legitimate claims against Schiller Lodge No. 66, F. A.M., they, when established, may be impressed upon the fund in the hands of the Grand Lodge as equitable charges. They have not been established in this suit, nor is the question raised in the pleadings.
The fund will be ordered paid to the Grand Lodge. *Page 463